Opinion for the court filed by Chief Judge PROST. Dissenting opinion filed by Circuit Judge NEWMAN.
*1356 PROST, Chief Judge.
This appeal arises from the inter partes review (“IPR”) of U.S. Patent No. 7,712,-683 (“'683 patent”) owned by Prolitec, Inc. The United States Patent and Trademark Office, Patent Trial and Appeal Board (“Board”) concluded that both of the claims in the '683 patent were unpatentable as anticipated under 35 U.S.C. § 102 alone and additionally as obvious under 35 U.S.C. § 103. See ScentAir Techs., Inc. v. Prolitec, Inc., IPR2013-00179, Paper No. 60, 2014 WL 2965704 (PTAB June 26, 2014) (“Board Decision”). Prolitec appeals the Board’s determination that the two claims were unpatentable and the Board’s denial of Prolitec’s motion to amend. The Director of the United States Patent and Trademark Office (“Director”) intervenes for the limited purpose of addressing the Board’s regulations and practices regarding motions to amend. For the reasons stated below, we affirm.
BACKGROUND
The '683 patent relates to a cartridge for use with “diffusion devices,” commonly known as air freshener dispensers. See '683 patent col. 1 11. 56-60. The cartridge contemplated by the '683 patent with its two major components, a reservoir 114 and a diffusion head 122, are depicted in Figure 9, shown below:
[[Image here]]
The reservoir contains a liquid to be diffused and a “head space” above the liquid. '683 patent col. 5 11. 45-57. The diffusion head includes a baffle 140 having an inlet cavity 168 and an outlet cavity 172 detailed in the figure below. Id. at col. 6 11. 38-62. The outlet cavity 172 is further divided by a bulkhead 186 into a first chamber 188 and a second chamber 190. Id. The bulkhead and the two chambers trap larger mist particles, which would turn into liquid and flow back to the reservoir. Id. at col. 6 1.63-col. 7 1.12. The goal is to have mostly the finer mist particles exit the cartridge. Id.
*1357 [[Image here]]
The diffusion head further includes a ven-turi assembly, shown below, with an atom-' izing chamber between the narrow end 238 and the wide end 242. Id. col. 9 11. 26-30.
[[Image here]]
The '683 patent only has two apparatus claims, both are independent. The Board’s final written decision on June 26, 2014 found that the two claims of the '683 *1358 patent were anticipated by PCT Application No. W02004/080604A2 (“Benalikhoud-ja”) and obvious over the combination of Benalikhoudja and U.S. Patent No. 7,131,-603 (“Sakaida”). The Board also denied Prolitec’s motion to amend, concluding that Prolitec did not meet its burden of establishing that it was entitled to the relief requested.
Prolitec appeals from the Board’s decision, and the Director intervenes. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).
Disoussion
We review the Board’s conclusions of law de novo and its findings of fact for substantial evidence. See In re Gartside, 203 F.3d 1305, 1316 (Fed.Cir.2000). The Supreme Court clarified the standards of review for claim construction in Teva Pharmaceuticals U.S.A., Inc. v. Sandoz, Inc., — U.S. -, 135 S.Ct. 831, — L.Ed.2d -(2015). Pursuant to Teva’s framework and our review of Board determinations, we review the Board’s ultimate claim constructions de novo and its underlying factual determinations involving extrinsic evidence for substantial evidence. See Teva, 135 S.Ct. at 841-42.
I
A
Prolitec first challenges the Board’s refusal to narrow the meaning of the claim element “mounted,” recited in both patent claims in the context of “a diffusion head mounted to the reservoir.” See '683 patent col. 16 11. 1, 35. Prolitec asserted that the claim element should mean “permanently joined.” Board Decision at 13-14. The Board did not provide a specific construction but relied on ,the disclosure of the '683 patent and the testimony of Prolitec’s expert to reject Proli-tec’s proposal. Id.
On appeal, Prolitec argues that the Board’s conclusion was inconsistent with the use of a permanent means of bonding in “every embodiment in the '683 patent” and inconsistent with “[t]he very purpose of the '683 patent” to provide a “disposable cartridge for one-time use” as its expert opined. Appellant’s Br. 31-34 (citing J.A. 1553-59,1563).
Prolitec overstates what the '683 patent describes. The closest description in the '683 patent to Prolitec’s “one-time use” argument is a singular mention that “[i]t is also anticipated that all of cartridge 104 may be made of a biodegradable material, as it may be desirable that the cartridge is configured, to be used only one time before being discarded.” '683 patent col. 1111. 6-9 (emphases added). The problem for Prolitec is that the use of “may” signifies that the inventors did not intend to lim it, the patent as Prolitec’s expert opined.
Indeed, the very next sentence in the specification shows that the inventors intended for the patent to cover reusable cartridges as well: “It is also anticipated that cartridge 104 could be configured to be returned to a manufacturer or other entity after its planned use to have the cartridge disassembled, cleaned, any worn or damaged parts replaced and then refilled and resealed for use.” See id. at col. 11 11. 9-13. This explicit description of disassembling and refilling the cartridge contradicts the opinion of Prolitec’s expert. Prolitec’s expert cannot rewrite the intrinsic record of the '683 patent to narrow the scope of the patent and the claim element “mounted.” See Phillips v. AWH Corp., 415 F.3d 1303, 1318 (Fed.Cir.2005) (en banc) (explaining that “a court should discount any expert testimony ‘that is clearly at odds ... with the written record of the patent’ ” (quoting Key Pharms. v. Hercon *1359 Labs. Corp., 161 F.3d 709, 716 (Fed.Cir.1998))).
Moreover, the key passage in the '683 patent relied upon by Prolitec states that “head assembly 604 and reservoir 602 may be jointed to each other by heat or ultrasonic welding spin welding, or by use of an adhesive.” '683 patent col. 13 11. 31-33 (emphasis added). As the Board correctly explained, this passage does not limit the possible methods to the examples listed and those examples are not limited to permanent methods of joining. In particular, the Board explained that the use of an adhesive encompasses a non-permanent method of bonding. The Board quoted Prolitee’s expert for conceding that bonding by “[a]n adhesive can be permanent or nonpermanent.” Board Decision at 14 (quoting J.A. 1476). This subsidiary factual determination regarding the nature of adhesive bonding was supported by substantial evidence. We discern no error in the Board’s rejection of Prolitec’s proposal to limit, “mounted” to mean “permanently joined.”
B
Prolitec next challenges the Board’s construction of “fixed in position,” recited in the context of “a conduit including ... a second end ... fixed in position with respect to the narrow end” in Claim 1. See '683 patent col. 16 11. 11-15. Prolitec’s proposal to construe this claim element to mean “non-adjustable” was rejected by the Board in favor of “stationary.” Board Decision at 11. The Board noted that Prolitec’s only citation to the '683 patent in support of its proposal lacks any discussion of either adjustability or nonadjustability. The Board then rejected Prolitec’s expert testimony focusing on the '683 patent’s purported contemplation of a single use cartridge as contrary to the '683 patent’s express statement that the cartridges may be reused.
On appeal, Prolitec abandons its reliance on the '683 patent’s specification. Instead, Prolitec relies solely on its expert’s testimony and asserts that allowing for adjustments of the conduit inside the venturi head would not be necessary or desirable because the '683 patent contemplates having the manufacturer setting the conduit in the optimal position.
The Board was again correct. There is nothing in the '683 patent that discusses either allowing or preventing adjustment of the conduit inside the venturi head. Rather, the passage cited by Prolitec before the Board merely states that “second end 236 of tube 220 is positioned adjacent a narrow end 238 of a venturi 240.” '683 patent col. 9 11. 26-27 (emphasis added). The Board’s claim construction is consistent with the plain meaning of the claim language and the description of positioning the conduit in the specification.
Moreover, as discussed above, the '683 patent describes cartridges that can be disassembled to be reused. See '683 patent col. 1111. 9-13. Prolitec’s expert opinion, premised upon a theory that the '683 patent is limited to a single-use cartridge, was inconsistent with the intrinsic record of the '683 patent and was properly rejected by the Board. See Phillips, 415 F.3d at 1318. We therefore affirm the Board’s construction of “fixed in position.”
C
Prolitec finally challenges the Board’s construction of “seeond/secondary chamber,” recited in Claim 1 in the context of “the outlet including a second chamber through which the gas within the head space must pass to exit the cartridge” and recited in Claim 2 in a similar context but replacing the word “second” with “secondary.” See '683 patent col. 16 *1360 11. 20-24, 46-48. Prolitec proposed that the claim element should mean “secondary in reference to the head space, through which the gas must pass after the head space and before exiting the cartridge.” Board Decision at 14-15 (quoting Proli-tec’s response). Prolitec argued that the claim language contemplates a system with three chambers: an “initial expansion chamber,” a “head space” as a second chamber, and the claimed “secondary chamber” is the third chamber. Id. at 15 (quoting Prolitec’s response). The Board disagreed with Prolitec, explaining that the claim language recites only two “chambers”: an “initial expansion chamber” and a “second/secondary chamber.” Id. The Board therefore construed the claim element to mean “secondary in reference to the initial expansion chamber.” Id.
On appeal, Prolitec repeats its contention that the element “head space” is one of three chambers claimed by the’ '683 patent. Appellant’s Br. 36. We cannot agree with this contention. As the Board correctly noted, each claim recites only two “chambers”: an “initial expansion chamber” and a “second/secondary chamber.” The inventors chose to claim the element “head space” using those precise words, rather than calling it another “chamber.” Moreover, there is nothing else in the '683 patent that would compel an interpretation of “head space” as a “chamber.”
Prolitec further asserts on appeal that the Board’s construction erroneously allows the headspace and the secondary chamber to “collapse into one, such that even just a portion of the head space satisfies the claimed chamber limitation.” Id. More specifically, Prolitec faults the Board for finding that a “physical separation” is not needed for the claim element “chamber.” Reply Br. 5-6. These arguments, however, are focused on the meaning of the word “chamber.” Prolitec does not dispute ScentAir’s characterization that the definition of “chamber” was not in dispute before the Board. See id. at 6. The dispute before the Board was focused on the basis for the term “second/secondary.” Given what the parties disputed, the Board was justified in stating that each claim, in explicit terms, recites only two “chambers” and then distinguishing the disputed claim element “second/secondary chamber” from the • “initial expansion chamber.” We are not persuaded by Prol-itec that the Board’s construction was erroneous..
II
Prolitec appeals the Board’s finding that both claims in the '683 patent were anticipated by Benalikhoudja. Benalikhoudja is an international patent application also owned by Prolitec. According to Prolitec, Benalikhoudja discloses Prolitec’s earlier product. A representative drawing from Benalikhoudja is reproduced below:
*1361 [[Image here]]
Prolitec argues that Benalikhoudja’s fastening of the liquid reservoir by a tamper-proof ring does not satisfy the “mounted” claim element under its proposed construction of “permanently joined.” According to Prolitec, Benalikhoudja’s tamper-proof ring only signals whether the device has been opened, but does not prevent opening of the device. As discussed above, the '683 patent also does not require a permanent joining between the diffusion head and the reservoir. The '683 patent simply claims “mounted” and describes cartridges that may be configured for one-time use or configured with an ability for remanufacturing. In terms of sealing the respective liquid reservoirs, the '683 patent and Benalikhoudja both contemplate cartridges that are not intended to be opened by consumers, but could be opened outside of normal operation such as during remanufacturing. We are not persuaded by Prolitec’s theory in distinguishing Benalikhoudja based on the “mounted” claim element in the '683 patent.
Similar to its “permanently joined” theory, Prolitec argues that Benalikhoudja lacks a diffusion conduit “fixed in position” under its proposed construction of “nonadjustable” because Benalikhoudja teaches instead a micrometer screw for adjusting its nozzle. But the '683 patent is not limited to devices that affirmatively prevent adjustments of the diffusion conduits and we affirm the Board’s construction of “fixed in position” to mean simply “stationary” as discussed above. Apart from the claim construction, Prolitec does not dis *1362 pute the Board’s finding that Benalikhoud-ja’s micrometer screw holds its diffusion nozzle stationary during normal use. See Board Decision at 21. We therefore affirm the Board’s finding that Benalikhoud-ja teaches the’ '683 patent’s “fixed in position” claim element.
Prolitec next argues that Benalikhoudja does not teach the '683 patent’s “second/secondary chamber” because Benalikhoudja lacks a three-chambered system as Prolitec characterizes the '683 patent to require. Appellant’s Br. 40. Prolitec also faults the Board for finding that the claims “do not require a third chamber.” This is again a claim construction argument which we rejected as discussed above. Prolitec further argues that Benalikhoudja’s release opening 195 — identified by the Board as teaching the '683 patent’s “second/secondary chamber” claim element — is not a “chamber” that is separate from a “head space”: “it is merely the top of the head space.” Id. This argument is in large part a dispute on the meaning of “chamber,” which was not raised before the Board as discussed above. Aside from the meaning of “chamber,” Prolitec clearly recognizes that the release opening 195 in Benalikhoudja is a distinct feature from a head space. Indeed, Benalikhoudja labels the release opening 195 separately from the reservoir 100 in which the head space is located. Given that release opening 195 is a feature distinct from a head space, we fail to see any reversible error in the Board’s finding that Benalikhoudja’s release opening 195 satisfies the '683 patent’s “second/secondary chamber” claim element as Prolitec alleges.
Finally, Prolitec argues that the '683 patent requires only two openings at the narrow end of the venturi in contrast to the “three openings” “illustrate[d]” in Benalikhoudja. Appellant’s Br. 41. The Board found that Benalikhoudja teaches the two openings claimed by the '683 patent and that Benalikhoudja’s teaching of a third opening — “nozzle 145 of outside air line 140” — is merely optional. Board Decision at 22. The Board therefore concluded that an “ ‘optional inclusion’ of a feature in the prior art anticipates a claim that excludes the feature.” See Board Decision at 22 (quoting Upsher-Smith Labs., Inc. v. Pamlab, L.L.C., 412 F.3d 1319, 1322 (Fed.Cir.2005)). The Board’s finding and conclusion were both correct. The disputed third opening in Benalikhoudja is explicitly described as optional. J.A. 1349 (“Optionally, the device comprises an outside air inlet duct....”); J.A. 1356 (“The venturi 160 can also have an outside air line 140 with a nozzle 145 in the nebulization zone 130.”) (emphasis added). To counter Benalikhoudja’s explicit disclosures, Prolitec relies on its expert to re-characterize Benalikhoudja’s third opening as essential, not optional. We are not persuaded by Prolitec’s arguments.
We therefore affirm the Board’s findings that the two claims in the '683 patent were anticipated by Benalikhoudja. Because we affirm the Board on the anticipation grounds, we do not reach the Board’s determination on the obviousness grounds.
Ill
Prolitec finally appeals the Board’s denial of Prolitec’s motion to amend. Prolitec moved to amend the '683 patent by proposing to substitute “permanently joined” for the element “mounted” in claim 1, thus incorporating its proposed claim construction for the claim element. ScentAir opposed Prolitec’s motion and asserted that a patent by Allred cited during the original prosecution of the '683 patent teaches permanently joining of a diffusion device. On reply, Prolitec did not dispute that Allred teaches a permanent bonding but asserted *1363 that Allred lacks other features purportedly described in the '683 patent. See Board Decision at 29 (quoting Prolitec’s Reply Br. 5). The Board denied Prolitec’s motion to amend, finding that Prolitec failed to demonstrate that the proposed claim “is patentable over, for example, Benalikhoud-ja in view of Aired.” Board Decision at 30.
On appeal, Prolitec initially argued that the Board’s placing the burden on the patentee to show patentability of the proposed claim amendments was in conflict with the statutes governing IPRs. Subsequent to the parties’ briefing, we issued an opinion in Microsoft Corp. v. Proxyconn, Inc., 789 F.3d 1292 (Fed.Cir.2015) that resolved this question. Prolitec concedes at oral argument that Proxyconn foreclosed Prolitec’s contention that a patentee in an IPR does not bear the burden to show patentability of proposed claim amendments. Oral Arg. at 6:08-6:09, available at http://oralarguments.cafc.uscourts.gov/ default.aspx?fl=2015-1020.mp3.
At oral argument, Prolitec raised two alternative objections to the Board’s decision. First, Prolitec argued that it did not have the burden to establish patentability over prior art references cited in the patent’s original prosecution history because they are not prior art of record in the IPR. Id. at 7:21-7:32. Prolitec also argues that the Board failed to consider Prolitec’s arguments in its reply brief in support of its motion to amend. Id. at 13:56-14:51. We disagree with Prolitec on both of its arguments.
In Proxyconn, we affirmed the Board’s denial of the patentee’s motion to amend because it failed to show that its proposed substitute claims were patentable over “prior art of record” — namely, a reference that the Board used as grounds for instituting review of claims other than those sought to be amended. 789 F.3d at 1303-08. We explained that the Board’s interpretation of its regulations in denying the proposed amendment was reasonable under the particular circumstances in Proxy-conn and was consistent with the United States Patent and Trademark Office’s (“PTO’s”) position expressed in the Board’s informative decision in Idle Free Systems, Inc. v. Bergstrom, Inc., IPR2012-00027, 2013 WL 5947697 (PTAB June 11, 2013). Proxyconn, 789 F.3d at 1307. However, we expressly declined to decide in Proxyconn whether the PTO’s additional guidance about the patentee’s burden in Idle Free also constituted a permissible interpretation of the PTO’s regulations. Id. at 1307 n. 4. Following our Proxyconn decision, the Board issued a “representative decision” providing further guidance on the patentee’s burden on a motion to amend. See MasterImage 3D, Inc. v. RealD Inc., IPR2015-00040, 2015 WL 4383224 (PTAB July 15, 2015). In particular, the Board stated, among other things, that “prior art of record” includes “any material art in the prosecution history of the patent.” Id. at 2.
We conclude that the PTO’s approach is a reasonable one at least in a case, like this one, in which the Board’s denial of the motion to amend rested on a merits assessment of the entire record developed on the motion, not just on the initial motion itself. The Board’s position — that the patentee’s burden on a motion to amend includes the burden to show patentability over prior art from the patent’s original prosecution history — is not in conflict with any statute or regulation. Moreover, it is not unreasonable to require the patentee to meet this burden. The prior art references cited in the original patent’s prosecution history often will be the closest prior art and will already have been reviewed by the patentee. Evaluating the substitute claims in light of this *1364 prior art helps to effectuate the purpose of IPRs to “improve patent quality and limit, unnecessary and counterproductive litigation costs.” Proxyconn, 789 F.3d at 1308 (quoting H.R.Rep. No. 112-98, pt. 1, at 40 (2011), 2011 U.S.C.C.A.N. 67, 69).[1]
The course of proceedings on the motion to amend in this case demonstrates the reasonableness of the PTO’s position on the scope of prior art the patentee must distinguish. Prolitec knew which proposed claim elements it was relying on to overcome the Board’s invalidity determinations, and in its motion to amend, it asserted that “[n]one of the art of record or other art known to Prolitec discloses, teaches, or suggests a cartridge for use with a liquid diffusion device, including all of these limitations, and having a liquid reservoir that is permanently joined to a diffusion head.” Board Decision at 28 (quoting Prolitec’s Mot. to Amend 6). But in the combination of its motion and its reply brief supporting the motion, Prolitec simply failed to support adequately its assertion of patentability over Allred (cited in the prosecution history) and Benalik-houdja (the key IPR prior art), even after ScentAir had called attention to Allred in opposing the motion to amend. See Board Decision at 29 (citing ScentAir’s Opp. to Motion to Amend at 10-11).
In particular, .Prolitec’s argument in its reply brief that the proposed amendment would be patentable over the Allred reference was limited to asserting that Allred fails to anticipate the proposed claim, i.e., that Allred doés not teach every single limitation. Prolitec, however, conceded that Allred teaches the very element of “permanently joined” that Prolitec was seeking to add. See Board Decision at 29-30 (quoting Prolitec’s Reply Br. 5 (“All-red’s disclosure does include a liquid reservoir that may be welded to an ‘atomizing nozzle’ but the nozzle does not include anything to prevent large liquid particles from escaping the device, such as an outlet cavity having a second opening downstream from a head space.”)).
Given Prolitec’s concession and the Board’s finding that Benalikhoudja anticipates the original claims, Prolitec should have also shown that its amended claim would be patentable over the obviousness combination of Benalikhoudja and-Allred. The Board, in fact, specifically asked Proli-tec during oral argument whether Prolitec showed that its proposed claim would be non-obvious over, for example, Benalik-houdja in combination with Allred. See J.A.2068 (“The problem is that you also need to show why the claim is not obvious. It doesn’t seem like an argument was made on that ground. If it was, it would have been an argument about the claim is patentable over Benalikhoudja in view of Allred/Poncelet.”). But Prolitec provided no substantive and particularized response to the Board’s direct question, asserting in closing only that “even from an obviousness perspective, the elements still need to be in a combination somewhere, and Proli-tec is not aware of such combination.” See J.A.2084.
*1365 The record thus shows that the Board considered Prolitec’s arguments, and simply rejected them on the merits, considering the full record made on the motion to amend. The Board plainly quoted from Prolitec’s reply brief addressing the Allred reference cited in the prosecution history of the '683 patent. See Board Decision at 29 (quoting Prolitec’s Reply Br. 5). The Board further quoted from Prolitec’s arguments made during the oral hearing regarding the prior art reference cited in the prosecution history of the '683 patent. See id. (quoting Tr. 68,11. 19-60, 1. 2). We cannot agree with Prolitec’s contention that the Board failed to consider Prolitec’s arguments in its reply brief. Thus, this case does not present the questions that would be raised by a Board denial of a motion to amend based entirely on procedural or other deficiencies in the initial motion, independently of any consideration or assessment of the full record developed on the motion for what it indicates about the patentability of the proposed substitute claims.
In the circumstances of this case, we also cannot find a denial óf procedural rights, such as those granted by the Administrative Procedure Act, based on an insufficient notice or opportunity to respond. For example, as in Proxyconn, ‘.‘this is not a ease in which the patentee was taken by surprise by the Board’s reliance on an entirely new reference or was not given adequate notice and opportunity to present arguments distinguishing that reference.” Proxyconn, 789 F.3d at 1308. The Board simply disagreed with Prolitec’s arguments for sufficient reasons on the merits. We discern no reversible error in the Board’s denial of Prolitec’s motion to amend.
AFFIRMED

. The dissent notes that the PTO has suggested changing its rules regarding motions to amend after the briefing was completed in this case and contends that Prolitec did not have the benefit of those changes. Dissent at 1367-68. But at least as relevant here, the changes to which the dissent refers were memorialized in Masterlmage 3D, under which a patent owner does not need to show its claims are patentable over the entire universe of un-cited art, but still needs to show its claims are patentable over the prior art of record&emdash; which includes art in the prosecution history of the patent. IPR2015-00040 at *3. The prior art at issue here was undisputedly in the prosecution history of the patent. Thus, the rule change that the dissent cites has no impact in this case.