## In re WELLS.
### Patent Appeal No. 2782.

Court of Customs and Patent Appeals.
Nov. 27, 1931.

Fred H. Hayn, of Los Angeles, Cal., for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

The appellant filed his application in the United States Patent Office September 2, 1924, for a patent on improvements on a rotary jar to be used in loosening stuck

drilling tools or pipes in bored wells. The Examiner rejected claims 46, 47, 48, 49, 50, 51, 52, 53, 55, 57, and 58. In addition to these claims, appellant sought to have reinstated claims 59 to 65, inclusive, which had been held allowable by the Examiner on May 6, 1926, and which had been afterward canceled by appellant's amendment of June 7, 1927. This relief was denied by the Examiner, and the Board of Appeals refused to disturb this action or to consider such proposed claims.

The Board of Appeals affirmed the decision of the Examiner, and, in addition, dismissed the appeal as to claim 54, included in the appeal by inadvertence.

The claims were rejected by the Board of Appeals on the following references: Kammerdiner (Reissue), 15760, Feb. 12, 1924; Flanegin, 446,622, Feb. 17, 1891; Pyles, 1,542,319, June 16, 1925.

The appellant's device is, as has been said, intended for use in loosening pipes or drilling tools which have become stuck or "frozen" in bored wells.

Claims 46 and 55 are typical, and are as follows:

"46. In an apparatus of the class described, in combination, a pair of relatively movable members, one of which is adapted to be held stationary while the other is adapted to have an upward strain placed thereon and continuously rotated through the arc of an entire circumference for subjecting said first member to one or more upward blows or shocks, each of said members being provided with means adapted to coact to produce said upward blows or shocks."

"55. In a rotary jar, in combination, a rotary casing, a jar stem operable in said casing, said casing and said jar stem being provided with means whereby a circulating medium may be passed there through, means associated with said casing for preventing said circulating medium from entering said casing, complementary jarring means associated with said casing and said jar stem, and coacting impact means associated with said casing and said jar stem for neutralizing the effect of said jarring means on said jar whereby injury thereto may be prevented."

The Examiner thus describes appellant's device and its action:

"The invention consists of a 'Rotary Jar' (meaning thereby a jar suitable for use in a string of rotary oil well tools) and consists of a body made in two parts 1 and 2, part 2 screwing into a drill pipe by means of pin 18 and having a polygonical drive portion 6

and an enlarged cavity ending in a screw threaded box into which is screwed part 1 which, in turn, has a lower cavity ending in a screw threaded box into which is screwed cam member 13. Extending through both parts of the body is a jar stem made in two parts 3 and 8, each of which passes through a stuffing box (14 or 15). The lower part of 3 is a pin on which is screwed a drill tool, fishing tool or more drill pipe, represented by 17 (which should have hole 12 continued into it). Passage 12 extending entirely through the mechanism is to convey rotary mud from the mud pumps above ground to the drill for lubricating, flushing, mudding or other purposes without getting it into the jar mechanism. Mounted on part 12 in the lower cavity of 1 are pins 10 on which revolve rollers 11 which coact with cam surface 13 to produce the jarring movement and mounted on 12 in the upper cavity is head 7 which has a double purpose i. e. to act as a drive with polygonical cavity 6 and as a jar hammer on shoulder 4, a ring 5 of suitable resilient material being between 7 and 4 to absorb part of the shock of impact.

"The operation of this structure is that when drilling or fishing the weight of the drill string is allowed to rest on the drill and the string is rotated in a clockwise direction driving through parts 18, 2, 6, 7, 9, 12 and 17. When it is desired to jar, the drill string is raised and a strain placed upon it, (which stretches the drill string several feet), and then the rotation in a clockwise direction is continued, rollers 11 and cam 13 causing a series of rapid telescoping movements which are converted into strong upward shocks by means of hammer 7 and anvil 4."

In rejecting the claims, the Examiner said:

"Pyles of record can be operated to meet applicant's functional limitations and he shows structure that meets the structure claimed. He is entitled to all the uses to which his invention may be reasonably put.
* * *

"Applicant has objected strenuously to the use of Pyles as a reference, but Pyles, while very different in structure, is a rotary jar and can be applied part by part to the claims that are rejected, each part substituted for an analogous part with an identical function. It reads on the claims and can be turned upside down and read on the claims."

The Board of Appeals said, on the same subject: "These devices, as a matter of fact, cooperate not with each other but with the sleeve 4, and while the patentee has fully de-

scribed one operation of the device by which jars or shocks may be imparted thereto, yet he has shown another means by which this function may be accomplished, namely, by reversing the direction of rotation of the drive member 3, the cam 9 in such event riding over the upper cam surface of the element 4 and dropping into the recesses formed in the cams, the same as is done with the applicant's device."

The Kammerdiner reference shows a drill jar consisting of an outside member or bowl connected and capable of rotation with the string of drill pipe. Inside this bowl are two subs, the upper one connected with the bowl and rotating with it and having a horizontal slot on its lower surface. The lower or "impact" sub is provided with a pocket on its upper surface. A member in the form of a T operates between these subs and extends downward through the bowl portion, and is attached to the drill tool or pipe by a screw thread.

When ordinary rotary drilling is being done, the pipe string is lowered and the head of the T rests in the slot in the upper sub, and all parts revolve clockwise. When the drilling tool is stuck, the pipe string is raised. This disconnects the head of the T from the slot in the upper sub, and, as the string revolves, the head of the T drops into the pocket of the lower sub, jarring the tool. If more than one jarring impulse is required, the pipe string is lowered, then raised and revolved, and another jar is given.

The Pyles reference shows a jar having a tubular outer drive section with a tubular driven section extending through the same, so arranged that they can be telescopically operated. When it is desired to jar the lower portion connected with the frozen tool downward, the central tubular member is raised and dropped upon the lower member attached to the tool. When it is desired to jar upwards, the whole string, including the lower member, is jerked upward. The parts are interconnected with a ratchet clutch, which holds them in position while rotary drilling is going on. As to these clutches, Pyles states in his specification: "Preferably the clutch elements have the form of ratchets as it is only necessary to maintain the rotatable connection in one direction of rotation in rotary drilling."

We are quite unable to see in what respect these references anticipate the device of appellant. Appellant has invented a machine which by a simple raising of the drilling string can be rotated indefinitely, pro-

ducing as many jars upon the stuck drilling tool or pipe as the operator finds necessary. It is plain that he has made a real contribution to the art and should have the protection which the law provides.

It seems to have been the opinion of both the tribunals of the Patent Office that, if the Pyles ratchet clutch were fitted to the Kammerdiner device, and should then be run backwards, appellant's device was fully anticipated. However, it seems quite apparent that neither Kammerdiner nor Pyles had any such idea. It is also a matter of extreme doubt whether any of these devices could be operated backwards, without an entire readjustment of the connections in the drilling string. Certainly this would be true if the joints were made by threaded pipes. The portion of Pyles' specification, heretofore quoted, plainly discloses that his device is intended to be rotated in one direction only.

The appellant's claims ought not to be rejected because of the possibility that, if the Kammerdiner or Pyles devices were operated in some other manner, similar results would ensue to those secured by the use of appellant's device. It is well said in Topliff v. Topliff et al., 145 U. S. 156, 161, 12 S. Ct. 825, 828, 36 L. Ed. 658: "It is not sufficient to constitute an anticipation that the device relied upon might, by modification, be made to accomplish the function performed by the patent in question, if it were not designed by its maker, nor adapted, nor actually used, for the performance of such functions."

"An earlier device, which must be distorted from its obvious design, cannot be an anticipation." Block v. Nathan (C. C. A.) 9 F.(2d) 311.

To like effect is In re Bager, 47 F.(2d) 951, 18 C. C. P. A. (Patents) 1094, and Minton and Ringel v. Thomas, 48 F.(2d) 425, 18 C. C. P. A. (Patents) 1153.

We are therefore of opinion that the group of claims, of which claim 46 is typical, should have been allowed. The case is different, however, as to claims 53 and 55, represented by said claim 53. These, we believe, are broad enough to read upon the Kammerdiner reference.

Objection has been made in the oral argument to the use of the Pyles reference herein, as showing the prior art. In view of the conclusions we have arrived at herein, that question does not become important, and will not be considered, for, conceding the admissibility of its use, as we have observed, it is not an anticipation.

We find no error in the decision of the Board of Appeals as to proposed claims 59 to 65, inclusive. It appears that these claims were not reinstated, as argued by appellant, and hence were not properly before the board for adjudication.

The decision of the Board of Appeals is. affirmed as to claims 53, 54, and 55, and is reversed as to claims 46, 47, 48, 49, 50, 51, 52, 57, and 58.

Modified.

