NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**CENTRIPETAL NETWORKS, LLC,**

*Appellant*

**v.**

**KEYSIGHT TECHNOLOGIES, INC.,**

*Appellee*

---

2024-2246

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2022-01525.

---

Decided:  April 2, 2026

---

DANIEL NOAH LERMAN, Herbert Smith Freehills Kramer (US) LLP, Washington, DC, argued for appellant.  Also represented by PAUL J. ANDRE, CHRISTINA M. FINN, JAMES R. HANNAH, Redwood Shores, CA.

GERARD M. DONOVAN, Reed Smith LLP, Washington, DC, argued for appellee.  Also represented by PETER J. CHASSMAN, MICHAEL JOHN FORBES, Houston, TX; JONATHAN IAIN MAX DETRIXHE, JONAH D. MITCHELL, San

Francisco, CA; JAMES CHRISTOPHER MARTIN, Pittsburgh, PA.

––––––––––––––

Before LOURIE and PROST, *Circuit Judges*, and BURROUGHS, *District Judge*.[1]

LOURIE, *Circuit Judge*.

Centripetal Networks, LLC ("Centripetal") appeals from a final written decision of the United States Patent Trial and Appeal Board ("the Board") determining that claims 1–20 of its U.S. Patent 10,284,526 ("the '526 patent") are unpatentable as anticipated or obvious in an *inter partes* review. *Keysight Techs., Inc. v. Centripetal Networks, LLC*, No. IPR2022-01525 (P.T.A.B. Apr. 15, 2024) ("*Decision*"), J.A. 1–66. For the following reasons, we *affirm*.

BACKGROUND

Centripetal's '526 patent is directed to methods and systems of network security using efficient decryption. *See* '526 patent at Abstract. Specifically, the '526 patent discloses methods of selectively decrypting packets of data, inspecting the contents of the packets, performing further action depending on the contents of the packets, and then transmitting the packets to their destinations. *See id.*

Keysight Technologies, Inc. ("Keysight") filed a petition for *inter partes* review, challenging all claims of the '526 patent, J.A. 102–84, which the Board granted, J.A. 267–330. The Board determined that claim 1, which is representative for purposes of this appeal, is unpatentable on four grounds: (1) anticipated by Cisco IronPort AsyncOS

––––––––––––––

[1]    Honorable Allison D. Burroughs, District Judge, United States District Court for the District of Massachusetts, sitting by designation.

7.1 for Web User Guide ("IPUG"), (2) anticipated by U.S. Patent Application 2012/0290829 ("Altman"), (3) obvious over IPUG, and (4) obvious over Altman in combination with U.S. Patent Application 2015/0121449 ("CP"). *Decision*, J.A. 66.

Centripetal timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## DISCUSSION

Centripetal challenges all of the Board's grounds for determining that the claims of the '526 patent are unpatentable. We address only the ground that IPUG anticipates claim 1 because, as we are affirming the Board on that ground, the other grounds are moot. Centripetal argues that the Board erred in construing claim 1 and determining that IPUG was a printed publication available before the '526 patent's priority date.

"We review claim construction *de novo* except for subsidiary fact findings, which we review for substantial evidence." *Acceleration Bay, LLC v. Activision Blizzard, Inc.*, 908 F.3d 765, 769 (Fed. Cir. 2018). Anticipation and the scope and content of prior art are questions of fact that we review for substantial evidence. *In re Chudik*, 851 F.3d 1365, 1371 (Fed. Cir. 2017); *Teva Pharms. USA, Inc. v. Corcept Therapeutics, Inc.*, 18 F.4th 1377, 1382 (Fed. Cir. 2021) (citation omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. of N.Y. v. Nat'l Lab. Rels. Bd.*, 305 U.S. 197, 229 (1938).

In relevant part, claim 1 recites:

[R]eceiving . . . one or more packets initiating at least one encrypted communication flow; . . . decrypting . . . each packet of an encrypted communication flow . . . and *performing a corresponding action* on each packet of the encrypted communication flow[;] . . . and re-encrypting, after performing

the corresponding action, each packet of the en-
crypted communication flow . . . and transmitting
each packet of the encrypted communication flow
to its intended destination.

'526 patent col. 17 l. 63–col. 18 l. 21 (emphasis added).

The Board determined that the claimed "'correspond-
ing action' includes any action, including the action of al-
lowing a further transmission of a packet, without any
further action." *Decision*, J.A. 13. We agree. Neither claim
1 nor the '526 patent's specification limits the "correspond-
ing action" to any particular type of action, nor do they in-
dicate that allowing a packet to proceed cannot be a
"corresponding action." In fact, the specification provides
exemplary "actions," including "blocking" a packet. '526
patent col. 6 l. 62–col. 7 l. 1. As the Board explained, "al-
lowing" a packet is the opposite of "blocking" a packet and
would naturally also be considered an "action." *See Deci-
sion*, J.A. 12.

Centripetal argues that this claim construction is in-
correct because it renders another claim limitation, "trans-
mitting each packet of the encrypted communication flow
to its intended destination," superfluous. Open. Br. at 28–
31. We disagree. As the Board explained, "the further
steps of re-encrypting and transmitting the packet . . . are
taken 'after performing the corresponding action,' e.g., af-
ter allowing the packet, and are presumed to be of different
scope from the allowing action" step. *Decision*, J.A. 13.
That is, under this construction, a "corresponding action"
of allowing a packet to proceed to the next step of "re-en-
cryption" would necessarily happen before, and be different
from, the final step of "transmitting each packet of the en-
crypted communication flow to its intended destination."

Indeed, the Board explained that the "corresponding
action" and "transmitting each packet" steps were "of dif-
ferent scope" and then found that IPUG disclosed both lim-
itations. *See Decision*, J.A. 13, 29–32. The Board found

that IPUG's "blocking, redirecting, or allowing the packet (with or without logging it or taking any other action)" discloses the "corresponding action," and then determined that IPUG also discloses "[r]e-encrypting and transmitting." *Decision*, J.A. 32. That determination is supported by substantial evidence. IPUG discloses that "[a]ccess polices are applied to the decrypted traffic," which could result in one of three actions: "[a]llow," "[b]lock," or "[r]edirect" the traffic. J.A. 1490, 1536–37. Then, "[a]ssuming the [a]ccess [p]olicy group allows the client to receive the data, the data is encrypted," and then the "[e]ncrypted data is sent to the client." J.A. 1537. Substantial evidence therefore supports the Board's determination that IPUG discloses both steps of performing a "corresponding action" and "transmitting each packet."

Centripetal further argues that the Board improperly concluded that IPUG was a printed publication under 35 U.S.C. § 102. We disagree. "Whether a reference qualifies as a 'printed publication' under § 102(b) is a legal conclusion based on underlying factual findings," and "[p]ublic accessibility is a question of fact that we review for substantial evidence." *Jazz Pharms., Inc. v. Amneal Pharms., Inc.*, 895 F.3d 1347, 1356 (Fed. Cir. 2018) (citation omitted). Centripetal argues that Keysight provided no evidence that the webpage that housed IPUG was searchable or indexed in any meaningful way; that is, Centripetal takes issue only with the Board's determining that IPUG was publicly accessible. Open. Br. at 39.

The Board's determination that IPUG was publicly accessible was supported by substantial evidence. Specifically, the record includes an archived version of the webpage housing IPUG dated before the '526 patent's priority date. *Decision*, J.A. 21. It also includes an expert declaration explaining that a person of ordinary skill would have looked for and located product manuals and technical documentation from vendors in the field, including materials like IPUG. *Id.* (citing J.A. 666). It was therefore

reasonable to conclude that the IPUG reference was available to the interested public before the '526 patent's priority date.

For the foregoing reasons, we see no error in the Board's determination that IPUG anticipates claim 1 of the '526 patent.

CONCLUSION

We have considered Centripetal's remaining arguments but find them unpersuasive or moot. For the foregoing reasons, we *affirm* the Board's decision.

**AFFIRMED**